### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

CARLA D.,[1]

      Plaintiff,

                                    **Case No. 2:22-cv-488**

    v.                               **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Carla D. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Acting Commissioner of Social Security denying Plaintiff's application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Acting Commissioner's decision.

## I.  PROCEDURAL HISTORY

On January 11, 2016, Plaintiff filed her application for benefits, alleging that she has been disabled since September 8, 2015. R. 131, 140, 304–05. The application was denied

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

initially and upon reconsideration. R. 132–39, 141–49. Plaintiff sought a *de novo* hearing before

an administrative law judge ("ALJ"). R. 184–85. ALJ Beth Shillin held a hearing on July 31,

2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R.

97–130. In a decision dated February 5, 2019, the ALJ concluded that Plaintiff was not disabled

within the meaning of the Social Security Act at any time from September 8, 2015, Plaintiff's

alleged disability onset date, through the date of that decision. R. 155–65 ("the 2019 decision").

On April 30, 2020, the Appeals Council granted Plaintiff's request for review of the 2019

decision, vacated that decision, and remanded the matter for further proceedings consistent with

the following:

- Admit and enumerate all available and relevant evidence into the record, both medical and procedural, and prepare an exhibit list in accordance with HALLEX I-2-1-20.

- Obtain additional evidence concerning the claimant's mental impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512). The additional evidence may include, if warranted and available, a consultative examination and medical source opinions about what the claimant can still do despite the impairment.

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 404.1527 and nonexamining source opinions in accordance with the provisions of 20 CFR 404.1527, and explain the weight given to such opinion evidence. The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources.

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law

Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

R. 168–69.

Following remand from the Appeals Council, the ALJ held a hearing on October 23, 2020, at which Plaintiff, who was represented by counsel, again testified, as did a vocational expert. R. 35–83. In a decision dated June 2, 2021, the ALJ again concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from September 8, 2015, her alleged disability onset date, through the date of that decision. R. 13–27 ("the 2021 decision"). That decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on December 2, 2021. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On July 26, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[3] On August 8, 2022, the case was reassigned to the undersigned. ECF No. 13. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

5

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous

period of at least twelve months.

III.    ALJ'S 2021 DECISION AND APPELLATE ISSUES

Plaintiff was 38 years old on her alleged disability onset date. R. 25. Plaintiff meets the

insured status requirements of the Social Security Act through December 31, 2023. R. 16. At

step one, the ALJ found that Plaintiff had engaged in substantial gainful activity after September

8, 2015, her alleged disability onset date, explaining as follows:

> The claimant worked after the alleged disability onset date and provided earnings
> records suggest substantial gainful activity for periods throughout the record that
> are not otherwise covered by regulations regarding unsuccessful work attempts or
> trial work periods. Here, the record shows that she earned a total of $11,990.57 in
> 2016 and $12,283.28 in 2017 (Ex. 3D). In 2018, the claimant earned $5738.74 (Ex.
> 10D). Part of her earnings in 2016 were unemployment earnings (Ex. 6D). At times,
> these earnings rise above those required to be considered substantial gainful
> activity. However, at the hearing, the claimant objected to these earnings being
> classified as demonstrative of substantial gainful activity based on a theory of
> averaging her earnings over the entire year. This argument is improper, as earnings
> are appropriately averaged on a monthly and quarterly basis where earnings were
> not sustained for a year. Social security generally uses earnings guidelines to
> evaluate whether work activity is significant gainful activity. The amount of
> monthly earnings considered as significant gainful activity, where the claimant is
> not statutorily blind, are those monthly earnings averaging more than $1,130 for
> 2016; $1,170 for 2017; and $1,180 for 2018. Looking at the quarterly report of
> earnings for the various years and jobs at issue and dividing those earnings by the
> three months in the quarter demonstrates a number of quarters with earnings well
> in excess of significant gainful activity.

R. 16–17. However, the ALJ continued with the sequential evaluation process.

At step two, the ALJ found that Plaintiff's bipolar disorder; depressive disorder; anxiety

disorder; and attention deficit hyperactivity disorder ("ADHD") were severe impairments. R. 17.

The ALJ also found that Plaintiff's history of hyperthyroidism and alleged chronic obstructive

pulmonary disease, renal artery stenosis, and heart murmur were not severe impairments. R. 17–18. The ALJ further considered Plaintiff's ongoing use of marijuana, including confirmed periods of substance abuse, but found that the condition was non-severe. R. 18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–19.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 19–25. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a cashier/checker, cashier II, home attendant, and hostess. R. 24–25.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.*, jobs as a price marker, a collator operator, and a mail sorter–existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 25–27. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from September 8, 2015, her alleged disability onset date, through the date of the decision. R. 27.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Acting Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 9; *Plaintiff's Reply Brief*, ECF No. 12. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 10.

IV.     **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

On June 22, 2018, Andrea Nagy-Hallett, M.D., Plaintiff's treating psychiatrist, completed a five-page fill-in-the-blank and check-the-box treating source statement regarding Plaintiff's psychological conditions. R. 782–86. Dr. Nagy-Hallett indicated that she had begun treating Plaintiff on June 1, 2018, but had also previously treated Plaintiff from June 2, 2014, through March 17, 2016. R. 782 (reflecting, *inter alia*, that Dr. Nagy-Hallett is a medical doctor and psychiatrist who is licensed in New Jersey). Dr. Nagy-Hallett diagnosed Plaintiff with bipolar disorder, ADHD, borderline personality disorder, and major depressive disorder. *Id*. She identified the following findings to support these diagnoses and her assessment of Plaintiff's resulting limitations, which had first appeared in June 2014: "Severely depressed mood with significant anxiety, passive suicidal thoughts, mood-swings, irritability, anger, impaired concentration & attention, forgetfulness[.]" *Id*. According to Dr. Nagy-Hallett, Plaintiff's disturbance of mood was accompanied by full or partial depressive syndrome, but not by bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes or anxiety limited to the presence of a particular object or situation (specific phobia) or by obsessive compulsive disorders. *Id*. The following were associated with Plaintiff's conditions: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; psychomotor retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; thoughts of suicide; and memory impairment, either short-term or long-term. R. 783. Asked to identify the particular clinical findings, including results of any mental status examination, that demonstrate the severity of Plaintiff's mental impairment or symptoms, Dr. Nagy-Hallett responded as follows: "poor concentration & attention, scatteredness, forgetfulness,

inability to retain new information, high level of anxiety, inability to relax[.]" *Id*. Dr. Nagy-Hallett assessed Plaintiff's limitations using the following scale: No limitation (the effects of the mental disorder do not prevent the individual from functioning independently, appropriately, effectively, and on a sustained basis, in a given area); mildly limited (ability to function independently, appropriately, effectively, and on a sustained basis is slightly limited); moderately limited (ability to function independently, appropriately, effectively, and on a sustained basis is fair); markedly limited (ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited); and extremely limited (unable to function independently, appropriately, effectively, and on a sustained basis). R. 784. Dr. Nagy-Hallett opined that Plaintiff was markedly limited in her ability to understand, remember, or apply information, and pointed to Plaintiff's "inability to understand how to take her medications." *Id*. Plaintiff was moderately limited in her ability to interact with others due to "high sensitivity to any kind of criticism or disapproval." *Id*. Plaintiff was extremely limited in her ability to concentrate, persist, or maintain pace because Plaintiff is "restless, scattered, cannot sit still for any period of time." *Id*. Dr. Nagy-Hallett also opined that Plaintiff was markedly limited in her ability to adapt or manage herself; the doctor explained that Plaintiff "presented with anger and crying spells when something was denied of her (smoke break)[.]" R. 784–85. In assessing Plaintiff's ability to understand and remember, Dr. Nagy-Hallett found that Plaintiff's short-term memory was markedly limited and that Plaintiff's long-term memory was moderately limited: "simple instructions had to be explained several times before she could grasp them[.]" R. 785. Dr. Nagy-Hallett specifically opined that Plaintiff was markedly limited in her ability to remember locations and work-like procedures and in understanding and carrying out detailed but uninvolved written or oral instructions and she was moderately limited in her ability to

11

understand and carry out very short and simple instructions. *Id*. Plaintiff was able to maintain

attention and concentration for less than five minutes before needing redirection or requiring a

break; she could not maintain regular attendance or be punctual within customary tolerances; and

she required enhanced supervision. *Id*. Dr. Nagy-Hallett further opined that Plaintiff was able to

work sometimes, but not consistently, with the general public, co-workers, and supervisors, and

she required praise and positive reinforcement from supervisors in order to handle stress and

emotions, noting Plaintiff's "increased sensitivity to real or imagined criticism & disapproval[.]"

R. 785–86. Plaintiff could sometimes, but not consistently, maintain socially appropriate

behavior, but was not able to respond appropriately to changes in work settings due to her

"difficulty holding emotional response[s] to minimal change in the partial care program." R. 786.

Finally, Dr. Nagy-Hallett opined that Plaintiff would be off task more than 25% of a typical

workday and was likely to be absent from work more than four days per month as a result of her

impairments and/or treatment. *Id*.

## V.    DISCUSSION

Plaintiff argues that the ALJ erred in weighing Dr. Nagy-Hallett's opinion, resulting in a

flawed mental RFC determination. *Plaintiff's Memorandum of Law*, ECF No. 9; *Plaintiff's Reply*

*Brief*, ECF No. 12. Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer*,

186 F.3d at 433; *Cotter*, 642 F.2d at 704. The ALJ's decision must include "a clear and

satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to

perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the

ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and

explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v.*

*Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[4] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d

---

[4] As previously noted, Plaintiff's claim was filed on January 11, 2016. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

14

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the

RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolds. She can have no exposure to heavy machinery or unprotected heights. She is limited to simple, repetitive and routine tasks. She can have no contact with the general public and only occasional contact with coworkers and supervisors, with "occasional contact" meaning the work done does not rely on group or team effort and, aside from initial demonstration, occasional check-in, or available to answer questions, the supervisor would not be engaged in constant or even frequent oversight and review. She can tolerate occasional exposure to environmental pollutants and temperature extremes.

R. 19. In reaching this determination, the ALJ, *inter alia*, assigned "[l]ittle weight" to Dr. Nagy-

Hallett's opinion, reasoning as follows:

> As for the opinion evidence, the claimant's treating psychiatrist, Dr. Andrea Nagy-Hallet[5] of MCGBHS completed a treating source statement. Dr. Hallet opined that the claimant has marked limitations in her ability to understand, remember, or apply information, and ability to adapt or manage herself; moderate limitation in her ability to interact with others; and extreme limitation in her ability to concentrate, persist, or maintain pace. Dr. Hallet also opined that the claimant could sustain concentration and persistence for less than five minutes; could not consistently interact with the general public, supervisors, and co-workers; would be off task more than 25% of the workday; and would need to be absent from work more than four times a day (Ex. 7F). Little weight is afforded to this opinion, as it is not consistent with the objective evidence to include Dr. Hallet's own treatment records. Dr. Hallet's treatment records continuously show the claimant with good insight, judgment, and impulse control. They also denote the claimant as goal directed with clear sensorium and oriented to time, person, and place (Ex. 4F, 10F). In addition, Dr. Hallet notes the claimant's inability to understand how to take her medications as reasoning for a marked limitation in her ability to understand, remember, or apply information (Ex. 7F at 3). However, the record indicates that the claimant has successfully taken her medication and shown improvement when on her medication (Ex. 4F, 10F). Furthermore, she has worked during the period under review in positions requiring regular interaction with the public, including the making of change (Ex. Testimony, 9D, 10D).

R. 23.

---

[5] The ALJ mistakenly spells this provider's name as "Nagy-Hallet" instead of "Nagy-Hallett."

Plaintiff argues that the ALJ failed to properly weigh Dr. Nagy-Hallett's opinion, which led to a flawed mental RFC. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 11–17. Plaintiff first argues that the ALJ improperly relied on a selective reading of Dr. Nagy-Hallett's treatment notes when concluding that this provider's opinion was inconsistent with those notes, and that the ALJ consequently relied on a mischaracterization of benign examination findings such as "good insight, judgment, and impulse control." *Id*. at 13–14 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 12, pp. 2–3 (citations omitted). In support of this argument, Plaintiff points to seven instances in the treatment notes in 2015, 2016, and 2018 in which Dr. Nagy-Hallett noted that Plaintiff's concentration and memory were impaired. *Id*. at 13–14 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 12, pp. 2–3 (citations omitted).

For her part, the Acting Commissioner contends that the ALJ thoroughly discussed the record evidence prior to her consideration of Dr. Nagy-Hallett's opinion. *Defendant's Brief Pursuant to Local Civil Rule 91.*, ECF No. 10, pp. 10–13 (citations omitted). The Acting Commissioner specifically denies that the ALJ erroneously relied on benign mental status findings without acknowledging abnormal findings; she argues that the normal mental status examination findings in the record provide substantial support for the ALJ's decision. *Id*. at 13–14. The Acting Commissioner's arguments are well taken.

Prior to weighing Dr. Nagy-Hallett's opinion, the ALJ expressly considered Plaintiff's testimony at the second hearing that, *inter alia*, she is generally able to manage her symptoms with medication, that she had experienced significant improvement in her overall well-being after abstaining from marijuana, and that her medications are helpful keeping her mood more stable; that in February 2016, although her concentration and memory were impaired, Plaintiff reported continued improvement in her mood as well as improved sleep and appetite; that

16

Plaintiff was discharged from psychiatric treatment in September 2016 after failing to attend two

scheduled appointments, but resume treatment in May 2018 with medication for depression,

mood stabilization, insomnia, and anxiety; that on June 15, 2018, Plaintiff's concentration and

memory were impaired, but the rest of her mental examination was normal and her medications

were adjusted; that at the next appointment in June 2018, Plaintiff's mental status examination

was unchanged and she was characterized as improved; that in August 2018, Plaintiff reported

sleeping well and having a good appetite and that, on clinical examination, Plaintiff was

conscious, cooperative, well oriented to time, place, and person, had no mood swings or

psychotic features, and had good insight, intact memory and judgment; that treatment records

through 2018 documented grossly normal mental status findings with improved memory,

improved attention and concentration, and logical, goal-directed thought processes and

appropriate levels of insight and judgment despite suggestions of a depressed mood and affect;

that 2019 treatment records reflected grossly normal mental status findings, including Plaintiff's

denial of manic or psychotic symptoms, and she typically presented with improved memory and

concentration in addition to clear thought processing and thought content with no obvious

deficits in insight, judgment, or ability to manage stressors and changes; that other treatment

records through 2019 continued to reflect grossly normal mental status with no signs of mania,

psychosis, or decompensation; that 2020 treatment records continued to record an unremarkable

mental status, including Plaintiff's own acknowledgment of improvement with medication

changes and continuing to "present as only minimally distractible during evaluations and

*generally presented* with intact memory and cognition, though at times she was suggested to be a

poor historian or to have decreased abilities for remote memory." R. 20–22; *see also* R. 18

(finding at step three, *inter alia*, a moderate limitation in understanding, remembering, or

17

applying information where, while Plaintiff's "treatment records showed impaired memory[,]" "they consistently reveal good insight and judgment" and "[m]ore recent records document improved memory and linear, logical thought processing. (Ex. 14F [R. 903–48, reflecting treatment records from July 2018 to September 2019], 18F [R. 1036–1233, reflecting treatment records from January 2019 to August 2020])" and that "[d]uring the relevant period she worked part-time and at certain points worked two jobs, which requires a basic level of understanding, remembering, and applying information"; and finding a moderate limitation in concentrating, persisting, or maintaining pace where, although "mental treatment records showed impaired concentration" and "[s]he testified that she is unable to think straight and that her mind races[,]" she worked as a cashier during the relevant period, "often reported symptom control from psychiatric medications[,]" and "more recent treatment records document improved abilities for focus and concentration so long as she remains compliant with medication and scheduled appointments. (Ex. 14F, 18F)"). In other words, the ALJ did not ignore, but instead actually acknowledged, evidence and testimony regarding some impairment in Plaintiff's concentration and memory when crafting the RFC, which included limitations to, *inter alia*, simple, repetitive, and routing tasks, no contact with the general public, and only occasional contact with coworkers and supervisors. R. 19–22. Moreover, although Plaintiff points to evidence of impaired concentration and memory on one occasion in 2015, two occasions in 2016, and four occasions in 2018, *Plaintiff's Memorandum of Law*, ECF No. 9, p. 14 (citations omitted), the ALJ expressly considered those impairments, but also properly noted that Plaintiff's symptoms had improved with medication and that the record also contained grossly normal mental status examination findings with improved concentration and memory later in 2018, 2019, and 2020. R. 18, 21–22; *cf. Cosmas v. Comm'r of Soc. Sec.*, 283 F. App'x 976, 978 (3d Cir. 2008) (affirming

18

denial of benefits where the ALJ relied on, *inter alia*, "the balance of the mental status examination [which] was normal") (internal quotation marks and citations omitted); *Bonner v. Saul*, No. 1:19-CV-1370, 2020 WL 4041052, at *15 (M.D. Pa. July 17, 2020) (finding that substantial evidence supported the ALJ's RFC determination where "[w]ith regard to Bonner's mental health impairments, the ALJ explained that the medical record demonstrated relatively normal mental status findings, including that Bonner exhibited coherent thought processes, a normal attitude and affect, good insight, normal thought content, intact recent and remote memory, and intact cognitive functioning"); *Pohl v. Berryhill*, No. 3:18-CV-11675, 2019 WL 3886974, at *7 (D.N.J. Aug. 19, 2019) (finding that the ALJ's weighing of a medical opinion "is also well supported by substantial medical evidence in the record[,]" including that the claimant's "mental health examinations were unremarkable and she routinely denied ever experiencing delusions, hallucinations, or suicidal thoughts").  In short, the ALJ appropriately considered the entire mental treatment record, including any contrary evidence, when crafting the RFC and substantial evidence supports her consideration of the evidence and Dr. Nagy-Hallett's opinion. R. 18–19, 21–22.

Plaintiff next complains that the ALJ erred in discounting Dr. Nagy-Hallett's opinion on the ground Plaintiff had successfully taken her medication and shown improvement on medication, arguing that a claimant with disabling impairments can sometimes show what is ultimately only a temporary improvement in her condition. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 14–15. Plaintiff further argues that her symptoms persisted even when she was taking medication and, therefore, the ALJ did not build a logical bridge between the evidence and the result. *Id*. at 15 (citations omitted). Plaintiff's argument is not well taken. As a preliminary matter, an ALJ may consider the functional effect of medication on a claimant's impairments.

19

*See* 20 C.F.R. § 404.1529(c)(3)(iv); *Seney v. Comm'r Soc. Sec.*, 585 F. App'x 805, 808 (3d Cir. 2014) (affirming denial of benefits where the ALJ considered, *inter alia*, the claimant's medication and its side effects) (citing, *inter alia*, 404.1529(c)(3)(iv)); *Gross v. Heckler*, 785 F.2d 1163, 1166 (3d Cir. 1986) ("If a symptom can reasonably be controlled by medication or treatment, it is not disabling.") (citations omitted). Moreover, Plaintiff's citations to the record do not persuade this Court that the ALJ improperly considered the documented improvement in Plaintiff's symptoms while on medication. Plaintiff cites to one occasion of ongoing symptoms in June 2018 despite being prescribed medication, and one occasion in September 2018 where Plaintiff reported feeling better while on medication but where examination still revealed impaired concentration and memory. *Plaintiff's Memorandum of Law*, ECF No. 9, p. 15 (citing R. 800, 927, 929). However, as the ALJ noted, Plaintiff's appointment in June 2018 came after more than a one-year gap in treatment. R. 21. The June 2018 treatment note also indicates that Plaintiff's medication was still undergoing adjustment. R. 21, 800–02. Plaintiff concedes that, in September 2018, she reported to Dr. Nagy-Hallett that she was feeling better, but she points to the notation "that Plaintiff's concentration and attention still vary and she could not sit still more than 5 minutes at a time." *Plaintiff's Memorandum of Law*, ECF No. 9, p. 15 (citing R. 927). However, this notation was not Dr. Nagy-Hallett's finding, but was simply the doctor's recitation of Plaintiff's subjective complaint. R. 927. Notably, the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F.

20

App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). Dr. Nagy-Hallett's mental status examination on that day reveals grossly normal results, including improved memory. R. 928. While this physician noted that Plaintiff's concentration was impaired, this Court has already discussed how the ALJ accommodated any limitations in concentration and memory by limiting Plaintiff to, *inter alia*, simple, repetitive, and routine tasks. R. 18.[6]

Plaintiff goes on to complain that the ALJ erred in discounting Dr. Nagy-Hallett's opinion on the ground that Plaintiff continued to work after her alleged disability onset date, arguing that "Dr. Hallett noted Plaintiff had to excuse herself several times at work as she was overly sensitive to criticism and would break down easily." *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 15–16 (citing, *inter alia*, R. 806). However, Plaintiff again simply recounts this physician's notation of Plaintiff's subjective complaints which, as this Court has previously explained, are not transformed into a medical opinion simply because they were memorialized in treatment notes. *See Hatton*, 131 F. App'x at 879; *Morris*, 78 F. App'x at 824–25. Notably, the ALJ discounted the intensity, persistence, and limiting effects of Plaintiff's subjective symptoms, a finding that Plaintiff apparently does not challenge. R. 21–24; *see generally Plaintiff's Memorandum of Law*, ECF No. 9. Plaintiff's argument, therefore, boils down to nothing more

---

[6] In addition, the ALJ went on to note that subsequent examinations reflect improved or intact concentration and memory. R. 22; *see also* R. 912, 916, 920, 1052, 1069, 1071, 1126.

21

than a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); *Markoch v. Comm'r of Soc. Sec.*, No. 1:20-CV-00417, 2020 WL 7586953, at *4-5 (D.N.J. Dec. 22, 2020) ("With regard to their impact on the RFC determination even when those impairments are considered not severe, Plaintiff does not articulate what additional restrictions should have been implemented. It is Plaintiff's burden to establish the severity of her impairments, and Plaintiff's challenge to the ALJ's consideration of her non-severe impairments amounts to mere disagreement with his analysis rather than showing any substantive error."). In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].").

Finally, to the extent that Plaintiff contends that the ALJ engaged in improper cherry picking to support her evaluation of Dr. Nagy-Hallett's opinion, *Plaintiff's Memorandum of Law*, ECF No. 9, p. 16; *Plaintiff's Reply Brief*, ECF No. 12, p. 3, that argument is unavailing. As set forth above, the ALJ properly considered the record evidence, including evidence that reflected impaired concentration and memory, when crafting the RFC determination. R. 18–24; *see also Davison v. Comm'r of Soc. Sec.*, No. CV 18-15840, 2020 WL 3638414, at *8 (D.N.J. July 6, 2020) ("The ALJ cited to multiple other reports and surveyed a significant amount of evidence. He was not required to discuss or describe every page of the record. He did not, as [the claimant]

seems to suggest, cherry pick a handful of positive statements out of a universe of negative statements."); *Lewis v. Comm'r of Soc. Sec.*, No. 15CV06275, 2017 WL 6329703, at *8 (D.N.J. Dec. 11, 2017) ("Though the Plaintiff accuses the ALJ of cherry-picking evidence, it actually appears that the Plaintiff is the one guilty of cherry-picking since the bulk of the medical record seems to indicate minimal issues with executive function and mental capabilities."). To the extent that there exists conflicting evidence in the record, it was the proper role of the ALJ to resolve such conflict. *See Hatton*, 131 F. App'x at 880 ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does her consideration of Dr. Nagy-Hallett's opinion.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  December 8, 2023                         *s/Norah McCann King*
                                           NORAH McCANN KING
                                           UNITED STATES MAGISTRATE JUDGE